Court of Appeals. My name is Patrick McSweeney, and I appear on behalf of the appellants, Michael Lindell and my appellant, Nick. The district court acknowledged, and the record is clear, that an adequate statement, an adequate allegation of a First Amendment retaliation claim was made when it said that the government engaged in the scheme to intimidate Mr. Lindell and those who share his beliefs and have associated with him from exercising their First Amendment right to express concern about the integrity of the voting system. The question is not whether there was an adequate allegation. The question is whether the facts justified the injunction and whether there was clear error in denying that injunction. This scheme and scheme is one of the considerations in determining whether there's a retaliatory motivation. The Tenth Circuit addressed that in the U.S., the PHE, Inc. case. It began in a public way with the three statements that are included in the complaint, statements made by three Cabinet officers, which the district court simply did not address except for one, which it mischaracterized, and that was the Attorney General's comment. The public statement, had it been a part of a statute, would have been clearly unconstitutional under Brandenburg and NAACP versus Clyburn Hardware. You cannot create a class... Counsel, I have to stop you because this is a preliminary injunction issue. Yes. I've had this field of law a great deal, and so the first thing I said when I, or I thought to myself when I picked up this case is what was the, where's the proposed form of order? And it was a little hard to dig out, but it's in there, and the proposed form of order includes in paragraph three, it requests an injunction from accessing any information already taken from the cell phone. Yes, Your Honor. Now, there's a grand jury, the grand jury was already in process. In fact, one of the complaints about the way the government proceeded was to simultaneously subpoena and do this, and I would say that that form of, or that particular provision cannot be enforced because that would interfere with the ongoing grand jury proceedings. And my recollection of preliminary injunction appellate law is if the form of order could not be, could not be granted, end of, end of appellate case. So what's your response to that? Your Honor, there was no question that we acknowledged there was interference with the ongoing criminal proceeding, and that included the grand jury. This injunction would, would further interfere. It would. Yes, yes, it would. Okay. Do you have any case where any federal court has ordered a preliminary injunction in a manner which would stop an ongoing grand jury proceeding? I can't recall one that specifically addressed the grand jury proceeding, but one that clearly encompassed any proceeding, any criminal proceeding conducted by the government, and that was Smith v. Meese, is one of those. And that was not a case that involved an injunction addressing the State court proceeding. In that case, it was a Federal court proceeding. Clearly, the law developed after. Well, at what stage? I don't know what case you just cited. Smith v. Meese is an Eleventh Circuit case that was decided on the basis of the violation of the First Amendment. I can't tell you precisely. I will do that, Your Honor, on rebuttal, but I'll resort to that opinion. There's no question that the request of relief is limited. The use of. How about my base question before you get to the merits of the data phase factors, and that is, if the form of order could not be entered, would not be lawful, perhaps not even constitutional to enter the order as proposed, then there can't be reversible error in denying the motion for preliminary injunction. If the law is settled that a Federal court can adjourn an ongoing criminal proceeding, that would necessarily include. I mean, now you're just. Now you're. That's not going to be obvious. Can you answer my question? What if you're wrong about that? What if I'm wrong about that? Is that the end of the appeal? No, I don't think it is, Your Honor. What would we do then? You would adjourn. You say that the district court must be reversed because we could, because it could have entered an enforceable order, and then give me a circuit case for that proposition. I don't have a circuit case on that, Your Honor. I mean, to me, it's kind of Hornbook injunction law. I understand. If the form of order proposed would be improper to enter, that's where a district court can give the moving party a chance to amend or proceed. But if it just denies, that's not reversible error. That's a fundamental problem I have with, or issue I have with this appeal. And if I understand your question, Your Honor, or your point, it assumes that the district court had no power to adjoin the proceedings of the grand jury, or were you saying that they had already begun their proceedings? I was not clear with your question. Well, your point was, Your Honor, were you saying that because the grand jury was already If the district court denied a preliminary injunction, denied to issue a preliminary injunction that would be improper, the appellate court is done. I have to say, yes, if it With that determination ends the appeal. If it were improper. Well, let's hear your argument for why it would be proper. Any criminal proceeding under the well-settled law that is an intrusion upon, used for punishment or to deter the exercise of the First Amendment can be enjoined. I don't think it matters at what stage. The Eleventh Circuit has said that. There's a line of cases in the Fifth and Eleventh Circuit that talk about race discrimination. And it's about prosecutions for people involved in voting registration activities as an attempted part on the part of state and federal prosecutors to discourage persons of color in the 1960s from voting. And there's that line of cases. And that seems to be the only line of cases out there that have ever gone through this thing where we're going to enjoin those types of prosecutions. But those injunctions all dealt with, you know, there was evidence presented to the judge that there was a pattern and a practice of state and federal prosecutors prosecuting to deprive people of color of their right to register and vote. Now, it doesn't seem like there's a lot of evidence in here that the judge could have looked at that would have said there's a pattern and practice of that type of abuse going on here. It seems to be much thinner. And the question is, to me, is like, is it so thin that it's really not cognizable when you consider that all of these claims can ultimately be brought in the criminal prosecution as well, right? I mean, that you follow where I'm at? Now, the Tromboski case clearly settled that proposition. In a First Amendment case, there's irreparable injury that cannot be adequately remedied at a later stage if there's a prosecution. You enjoin because the only way the First Amendment harm can be avoided is to enjoin it, not to have some post-injury remedy. That's why Deaver, Manafort, and the Trump case in the Eleventh Circuit are an opposite because they were not First Amendment cases. I would refer the panel to a case I just cited a moment ago, and that's the NAACP versus Claiborne Hardware. In that case, the Court said you cannot create a class of criminals by decree unless you can establish that there was an imminent threat of violence. And then it could not be attributed to all of the members. It could only be attributed to those to whom the evidence showed there was an imminent threat of violence. I think that addresses the question you asked. I thought it highly remarkable that the Court did not look at the absolutely remarkable statement of the Secretary of Homeland Security, that anyone who talked about, anyone who discussed whether the 2020 election had irregularities or election fraud was a domestic terrorist. That's not thin evidence. That is profoundly contrary to the First Amendment. I would like to reserve what time I have left, if I may, unless you have other questions at this point, Your Honor. Thank you. Good morning, and may it please the Court. Jenny Ellickson for the United States. I'd like to start just by addressing the comment that my friend on the other side just made about the statement of the Secretary of Homeland Security. I'm looking at paragraph 48 of the plaintiff's complaint, and it says that the Secretary of Homeland Security issued a guidance document in 2021 regarding domestic extremism that included sociopolitical developments such as narratives of fraud in recent general election. That does not suggest that that statement in the complaint is not the statement that opposing counsel just said. It's not a statement that I've heard. Say that. You mumbled that last. I missed it. Yes, I apologize. So the allegation in the complaint is not what opposing counsel just said here today. It was the Secretary of Homeland Security. This allegation is not that the Secretary of Homeland Security said that anyone You're going way beyond Rule 12, right? I mean, are you going beyond the record? No, I'm looking at the allegation in the complaint. What paragraph are you looking at? Paragraph 48. So it says the Secretary of Homeland Security issued a guidance document in 2021 regarding domestic terrorism that included, quote, sociopolitical developments such as narratives of fraud in the recent election. Yes. That allegation does not amount to a statement in the complaint that the Secretary of Homeland Security said that everybody who espoused narratives of election fraud is a domestic terrorist. And for the record, if you look at the record, there was no evidence presented by the plaintiffs that the Secretary of Homeland Security ever made such a statement. More generally, there is no support in the record for plaintiffs' allegations that the plaintiffs were acting in retaliation for the exercise of First Amendment rights in this case. The district court properly found that those allegations were unsupported and that the statements that plaintiffs had pointed to did not suggest retaliatory – were not retaliatory threats by the government. And if this – Is this guidance document attached to the complaint? No, Your Honor. I don't believe that it is. Is it in the record? I don't believe that it is. And I – Is that the same with the allegations that the Attorney General threatened criminal and civil actions against those who pursue audits of voting tabulations if those audits run afoul of federal laws? Yes. I don't believe that's in the record either. That would be true then as well with paragraph 47, the statement of the national – the Director of National Intelligence, too. So basically what we have here before us are these three allegations in the complaint? Yes. Which are – there was no – I think this court can look at the exhibits that the plaintiffs filed in support of their motion. I think they're at docket entry either 35 or 36. And I don't believe that these statements are included in – among those exhibits. But anyway – but even – even crediting these statements as – in the complaint as true, which I think that it seems that the district court did, giving the plaintiffs the benefit of the doubt, the district court found that these allegations did not show that the government was threatening retaliation against people who espouse theories of election fraud. And certainly there was – there was no clear error in the district court's finding on that respect. And if this court looks at docket entry 67 at the sealed search warrant materials, which are part of the district court record but are under seal, you can see the 80-page probable cause affidavit that led the magistrate judge in this case to find that it was appropriate. Given the massive public disclosure of this whole affair, for lack of a better word, why isn't this – why doesn't this fit – lawsuit fit within Judge Haney's dissent in Gun 1? Your Honor, I'm not sure that I'm familiar with that – with that dissent. Gun 1 was a big part of the – of the analysis in the district court. Yeah. Your Honor, I apologize. I'm not sure that I'm familiar with the dissent. Gun 1 did not issue – this is all – the majority said this is all the more reason for leaving the First Amendment question to another day and to a case that actually requires its resolution. And Judge Haney said in part because of, you know, security and privacy and government investigative issues. And Judge Haney said there's – there's been – there's been so much disclosure of this – of that – of the facts of the situation in that case that, you know, let's get on with – let's get – why can't we should address it now? Why isn't this – why doesn't this case almost fit that like a glove? If this Court wants to look at the First Amendment issue, I think the Court will see that the allegations and the record do not support the plaintiff's claim that there has been a First Amendment violation here. We're very comfortable with the Court, you know, reaching the First Amendment issue if the Court – No, your brief – your brief says that our decision in Llewellyn would – is inapplicable because it involved plausible allegations of bad faith. It seems to me for – you know, the government can just say these are implausible allegations, but I – I ain't so sure, so to speak. And if – and if – and if they aren't implausible, then Llewellyn is not inapplicable and what do we do? Well, the – the real key difference with Llewellyn, Your Honor, is that that was a case where this Court was reviewing the grant of a preliminary injunction. And in that case, the district court made two key factual findings. First, the district court found, based on the record – Here the district court just refused to look at it. No, Your Honor, the district court found that the First Amendment allegations claim was unsupported and I think repeatedly said that there was no merit to the First Amendment, that he had not shown any – that he was – had any probability of success on the First Amendment claim. He didn't foreclose the merits of the case, did he? Well, it's a preliminary injunction, Your Honor, so it's not a – it was not a dismissal order, but we're not at that stage yet. But with respect to the preliminary injunction, the inquiry is whether there is a fair probability of success on the merits and the district court found – At a minimum, why shouldn't we apply the procedures adopted by the Ninth Circuit and bank in comprehensive drug testing and set some procedures that will put some time limits on the length of time that this First Amendment-protected cell phone can be retained by the government. We'll put some limits or some – require some disclosures of whether attorney-client information has been accessed. The government just says, well, don't do that. Why shouldn't we? Well, Your Honor, first of all, the posture is – comes to this court after the district court has already reviewed the case and has found that those steps – the district court – the question is whether the district court abused its discretion. Did the Ninth Circuit affirm or did it modify or reverse? In the Ninth Circuit case, that – This would be a – affirm with directives. Yes, it is. So I know – I don't understand why you should get until the end of whatever the grand jury is doing is done to keep the cell phone and to do whatever – and to use it for whatever purposes and whatever parts of it you think is – well, that would be fine. Well, Your Honor, this – this court has repeatedly said in cases involving the government's retention of property and request for the return of property that if the government has an ongoing evidentiary need for the property, it is generally appropriate. I just wrote an opinion involving the Customs and Border Service where the one reason we affirmed the way they did it was they had such careful procedures for retaining – only retaining digital First Amendment things for a reasonable time and for unreasonable procedures. I want to just tack on to that. You know, here's the thing. This phone isn't contraband. This phone isn't child pornography. It's not, you know, direct drug dealing activity. It's just not contraband. And it can be mirrored in 12 seconds. So explain to me why it's reasonable for the government to be standing in front of a United States district judge and saying, yeah, we get to hold on to this phone until the end of time. And a reason for it is, well, you backed it up five days ago. Well, you don't know whether in that five-day period, whether he was trying to sell his company, whether he was engaged in some other kind of activities. And he says that the only way that he transacts his business is through this phone. You know, and the loss of five days of records in a business of some size could be devastating. And if the only difficulty for the United States is simply just, you know, plugging a disk drive into it and mirroring the image and giving it back, why isn't that something that should have happened months ago? And we shouldn't be sitting here talking about it today. Your Honor, I don't think that's really, you know, what he's asking for here. He wants his phone back. He wants this Court to enjoin the government from looking at data on his phone. But he doesn't just want the data on his phone back. One of the motions was to return the phone. Yes. Yes, Your Honor. And that was denied without any procedural limits on the length of time the government can keep it, what it can do to search it. Is there any limitations on what they can look for? Yes, Your Honor. Well, this is — Such as attorney-client? This is all governed by the search warrant. The magistrate judge issued after the government presented its affidavit. I don't care about that. We're not reviewing the magistrate judge. Well, I'd be interested to hear what you think the limits are in the warrant. Go ahead. Yes. So the warrant only authorizes the government to seize the physical phone itself, the government having established probable cause for that. And then evidence in the warrant lays this out in more detail. But evidence or information relating to violations of three specific statutes involving seven people named in the warrant and only if the data is from November 2020 on. And so the government is only allowed to seize that information. But questions. Let's suppose it is obvious from a search of the — before you read the entry in the phone that it appears to be attorney-client privilege. I assume your position would be the government can go in there and read it and decide whether it is or not. The government has — and this was before the district court — has set up a filter team to ensure that people connected to the invest — This should be judicially supervised. Your Honor, that's not the — that has not been a practice that's been approved by any court of appeals, as far as I'm aware. I think that filter teams are — I gave you one that's required procedures. We didn't get into what procedures. You're saying there is a procedure in place with a filter team within the department? Yes. And the filter team, if it sees something that's attorney-client, would keep that away from the investigative team? Yes, that's correct. That's correct. And more generally, the — But they look at it, first off. The filter team is separate. The way filter teams — But the government is looking at attorney-client privilege communications. The members of the filter team would, but they would not reveal that to the members of the investigative team. But what case law says that? So that's fine and dandy. We have a number of cases in our brief where courts of appeals have approvingly discussed the use of filter teams and taint teams in this — For attorney-client privilege materials? Yes. Yes, Your Honor. What circuits? I know off the top of my head, in the Fifth Circuit, there was a search warrant for a — This is the United States v. Jarman case. It was actually a search warrant to seize a computer from an attorney's house and to search his own computer. So this was an attorney's computer. And the Fifth Circuit discussed, without criticism, the government's use of filter teams and said that it was — part of its analysis was that it was appropriate for the filter team — for the search to take as long as it did because of the need for the filter team to go through the data. Was — Was there any discussion in the district court about this possibility of returning the phone after making a complete copy? Well, the search warrant authorizes the government to seize the physical device itself, so that indicates that the magistrate judges found that there's probable cause for the government to seize the phone. Come on. But my question was, was there any discussion, once it was seized, of making a copy so the government would have all the data and then returning the device? I'm not sure. I don't recall anything in the record specifically about that. Does the government have a position on whether that would interfere with the investigation? Well, just speaking generally, not specifically about this case, often a phone itself, separate and apart from the information on it, can be relevant evidence in a criminal case. What about speaking about this case? Would that be the case here? The phone remains relevant evidence in this case. Wait, wait, wait. What's relevant about the physical phone rather than the contents of the phone? I mean, listen, I've presided over a bunch of white-collar crimes, and they've gone into businesses, seized computers, and, you know, within hours they've mirrored those computers, and they've gotten them back to the alleged white-collar criminals, right? Why? I mean, I just am hearing nothing here that screams that this phone is somehow contraband or somehow so significantly different that the government needs the actual possession, physical possession of the phone. Because I'm looking at the phone. It's a black box. You know, it's the data in it that's important, right? So why is the box important to you? So speaking again at a higher level of generality, a phone can be the phone itself can be necessary to authenticate. You just said the phone is relevant in this case. Well, it is. What's the case? Are you telling me the government's decided the grand jury will indict, and it will be a criminal case? Your Honor, I can't comment on anything. Go ahead, I mean. What case are we talking about? We're talking about Michael Lindell v. United States. Yes. Please return my phone. The government still has. . . Relevant evidence in this case. The phone at issue in this case. The government continues to have an evidentiary need for the phone. Why in this case? Is this under seal or something that you don't feel you can discuss why? The government generally does not publicly comment on ongoing criminal investigations. But speaking at a higher level of generality, I can say, and I see that I'm over time a bit if I may finish my answer. Speaking at a higher level of generality, the phone can be important in a criminal case to authenticate that these, you know, a particular person, for example, was carrying that phone at a particular time. You need to be able to show the jury this is the phone we seized from this person, and it shows that this person is actually connected to the phone. And sometimes defendants will make arguments claiming that the information on the phone, that the phone wasn't theirs. Also, a phone can be an instrumentality of crime. Is this hypothetical or are you speaking from undisclosed knowledge of the investigation? I'm speaking at a higher level of generality. I'm not speaking about this. No, I said hypothetical. I didn't say generality. Yes. This is as a hypothetical matter. But they aren't there yet. Obviously, we've seen many cases where phones turn out to be relevant evidence for physical and other reasons. Yes. Hypothetical and, indeed, theoretical. Yes. And this Court is free to review the 80-page probable cause affidavit to see what gave the magistrate judge. Oh, nice of you. I'm trying to understand whether this issue was actually litigated in the district court. I don't remember seeing that. Did the defendant ask for the copy to be made and was that questioned? No. I think it was not. I'm not the defendant. I mean the plaintiff. Yes. The plaintiff say, I want it to be returned and was the issue joined about whether a copy should be made so that it could be returned? Yes. This wasn't something that was teed up in the district court. This idea that the government should be making a copy of the data and returning the phone itself. So the plaintiff could go back to the district court then and say that would be a means for facilitating return and the government would then have to explain to the district court why that wouldn't work in this particular case? Do you agree with that? Yes, in theory. Although I don't think that we should get there because there was no abusive discretion by the district court in finding that the plaintiffs had not satisfied the requirements for these extraordinary remedies. So I don't think that we're. Return of the phone is an extraordinary remedy? Yes, Your Honor. It is. This Court's precedent. What case says that? That was. At this point when there's no. All there is is an undisclosed, unexplained, quote, government investigation. This Court's decision in Filer Avenue says that these are extraordinary remedies and should be used with restraint. Return a cell phone post Riley v. California? It was a motion for return of property. That was property seized during the execution. Property. It was as. It was a search warrant executed at, you know, a brick and mortar building. So it was property seized pursuant to that search warrant. You don't think Riley v. California has any impact on the questions we're talking about? No, Your Honor. I think that this is. This fits within this Court's jurisprudence for motions for. I didn't say it was controlling, but it's been ignored. Riley and Carpenter. Yes.  I understand why those cases are in the courts. You know, that the Court is concerned about those issues. But we think that based on, you know, solid precedent from this Court. I'm just suggesting that those cases reflect an evolving interest of the Supreme Court in protecting these kinds of digital devices from excessive government interference, seizure, and so forth. Yes. But I'm not aware of any court that has determined that those cases place restrictions on the government's ability to seize cell phones pursuant to search warrants that satisfy the requirements. What about retention? Has that issue been litigated? Whether. You said no limit on seizing. But on this question of retention, has that come up in other courts? Yes. I think the general rule. The general principle that courts apply, that I'm aware of, is that as long as the government has an ongoing evidentiary need for property, for the most part, the government can retain it. I mean, you have to do a balancing test, and there are potential exceptions to that. But there isn't a time limit on. No showing of ongoing investigatory need. Well, we aren't even at that stage yet, because the burden is on the plaintiffs. But we're at the stage of a motion to return the phone, and the relief requested would be much broader than that. We're talking about whether lesser relief, because of the nature of a cell phone and its importance in daily life, should have been addressed. Which was clearly within the purview of the motion for return of this property. And the district court did clearly — the district court clearly went through and said, I'm looking at the — It said you can do whatever you want for as long as you want. The district court applied the governing law in this area. There is no governing law in this. There is with respect to government searches. Your Honor, it's correct that there may not be one that specifically discusses cell phones. We're talking about equitable constitutional remedies. Yes, Your Honor. Yes. But the question before the Court — and I know I'm far over time, so I should — I'll just wrap up. It's important. Yes. But I just — the question before the Court, we have really requests for extraordinary relief. A preliminary injunction is extraordinary relief. This Court's cases have said that a motion for getting return of property before criminal charges are brought is extraordinary relief. And an allegation that the government has been engaging in retaliation against somebody for exercising their First Amendment rights is an extraordinary allegation and that the record does not support here. So based — for all of those reasons, the district court carefully went through the analysis that this Court has laid out that governs these different inquiries. And the district court appropriately declined to grant the plaintiffs the relief that they want. And certainly, that falls within — it falls within well-settled law. And the abuse of discretion would have been for the district court to have granted the plaintiffs the relief. So if the Court has no further questions, we will rest on our briefs and ask the Court to affirm. Thank you. For rebuttal? Your Honor, I did consult this fifth case, Smith v. Mace. It was a 1987 case in the 11th Circuit. That case was a dismissal. It was a review of a dismissal of a class action by black plaintiffs who sought to black political leaders and activists. I think it's entirely proper for the district court to have enjoined any activity by the government, including taking information to the grand jury that it seized in violation of the Constitution, both under the First Amendment and the Fourth Amendment. We've cited the cases in which the First and Fourth are combined when a search involves the seizure of constitutionally protected, First Amendment-protected items, as this case was. There are two years of Mr. Lindell's communications with those people associated with him. This is clearly a freedom of association violation. The government doesn't address any method by which they can screen out the association communications. That was all in that two years of communications that were seized. This is not just about attorney-client review. We argue that the First Amendment issues have to be reviewed, not with the kind of deference usually given to a district judge. The Supreme Court has repeatedly said when constitutional intrusions are likely or alleged, the reviewing court must make an independent examination and not defer to the trial judge. That was the situation here. The retaliatory evidence was not simply the statements of, in Paragraph 4748, which, by the way, were referenced not only in the complaint but in the declaration. The complaint was verified. Under the reasonable recipient rule, a First Amendment violation is determined by what a reasonable recipient would glean from reading or hearing that threat. That's what we have here, Your Honor. In this case, there was no question that the statements made by the Cabinet officers were received. It was not disputed. But more importantly, this case was initiated after the Secretary of State of Colorado directed every local election official to break Federal and State law. There was no prospect of securing a conviction under those circumstances. First, there was no damage to a protected computer, which was one of the two substantive statutes listed in the warrant. And the other was identity theft. There was no identity theft. I know Your Honor has addressed the question of authorized use in the Gottlob's case. The Supreme Court has since decided a case under the same statute in the Van Buren case. It's not simply the use of someone else's identity. It's whether it is being used to commit another crime. I'd ask the Court to look at the Woolley case, Woolley v. Maynard, which was cited by the government in its opposition brief. That case adopted the position we have argued from the outset, that when you are directed to violate a law, you're in a double bind. In this situation, the allegation that there was computer damage or there was identity theft could not be prosecuted under those circumstances because the Secretary of State's order directed these people to do what they were obligated under Federal law to do, which was preserve the records. Whatever they had to do in those circumstances to get a forensic image, they did. And by definition, a forensic image is not something that damages a protected computer. I see my time has expired. Thank you, Your Honor. If you have any questions, I'm happy to answer. Thank you. Very good. Thank you, Counsel. The case has been well briefed and argued. It's important. The issues are far from routine, and we will take it under advisement. The Court will be in recess for 10 or 15 minutes. Thank you.